FILED
2008 May-14  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
BRIDGETTE BURGIN,              }
                               }
        Plaintiff,             }
                               }        CIVIL ACTION NO.
v.                             }        06-AR-1508-S
                               }
SITEL CORPORATION,             }
                               }
        Defendant.             }
```

**MEMORANDUM OPINION**

Plaintiff, Bridgette Burgin ("Burgin"), has invoked the court's federal question jurisdiction in suing her former employer, defendant, Sitel Corporation ("Sitel"), for disability discrimination under the Americans with Disabilities Act ("ADA"), for age discrimination under the Age Discrimination in Employment Act ("ADEA"), for religious discrimination, sex discrimination, sexual harassment, and hostile work environment claims under Title VII, and claims for ADA, ADEA, and Title VII retaliation. The court has before it the motion of Sitel for partial summary judgment on Burgin's disability discrimination, age discrimination, religious discrimination, sex discrimination, and Title VII retaliation claims. For the reasons that follow, the court will grant Sitel's motion in full, leaving Burgin's unchallenged sexual harassment, hostile work environment, and ADA and ADEA retaliation claims for trial.

1

**<u>FACTS</u>**[1]

Sitel is in the business of providing customer support and call center services.  Burgin is a forty-eight (48) year old female.  Sitel hired her on or about July 26, 2004 as a Customer Service Professional ("CSP") in its Birmingham, Alabama facility to provide support services for credit card account holders, primarily with Capital One credit cards.  In her position, Burgin was responsible for receiving incoming calls from customers and assisting them with issues they might have regarding their credit card account.  Burgin's immediate supervisor was her Team Manager, Charlyn Madison ("Madison").  Her Shift Manager was Charles Dyess ("Dyess").

Burgin claims that she was subjected to ridicule in the workplace.  She had a personality conflict with Madison, who she claims asked how old she was on a number of occasions and who remarked that she was "old."  Madison is 23 years old.  Burgin also claims that Dyess did nothing to help her when she repeatedly complained to him regarding this and other forms of conflict in the office.  Burgin, an avowed born-again Christian, also attests that, from time to time, she had her Bible sitting on her desk during the work day, which was admittedly against office policy.  She claims that Madison would ask her to remove her Bible but would only ask

---

[1]     In accordance with Fed. R. Civ. P. 56(c), the narrative statement of facts includes facts that are undisputed by the parties, and where there is a dispute, the facts are presented in the light most favorable to Burgin, the non-moving party.

other employees to remove books from their desks when Burgin pointed them out to her. Whether this endeared Burgin to her fellow employees is left to speculation, but Burgin claims that her co-workers called her derogatory names in reference to her religion. She complained to Dyess and to Charles Muro ("Muro"), Sitel's Human Resource Manager, about the negative treatment she was receiving. Dyess told Burgin he would try to take care of it. Feeling that nothing was being done, Burgin went above Dyess to Muro, who told her that he could not do anything about her complaints unless she was physically threatened.

Burgin is afflicted with a vision problem. As a child, her right eye was injured. As a result, she is legally blind in that eye. Because she cannot read out of her right eye, her vision in her left eye is strained. Despite her vision problem, Burgin is licensed to drive. While it is apparent to the observer that there is an irregularity in her right eye, Burgin did not inform Sitel of her vision problem when she commenced employment. Burgin received accommodations for her vision problem when she was a student at a public university and presented documentation regarding her vision problems from her doctor to the university. However, she never provided any such documents to Sitel. On several occasions throughout Burgin's employment at Sitel, she orally requested a glare-proof screen for her computer because the glare from her computer screen and/or the light from the sun hurt her eyes. She

never made any such request in writing.  She states that on one occasion when she was requesting the screen, she told Dyess that she was legally blind in her right eye but otherwise did not inform anyone at Sitel of her vision impairment and did not indicate that any vision impairment was a reason for requesting a glare-proof screen.  At her deposition, Burgin testified that she performed very well at her job despite her vision problem but that her obvious eye irregularity made her the subject of ridicule in the workplace and that several co-workers made rude comments regarding the unusual appearance of her eye.

As a CSP, Burgin was evaluated periodically for her on-the-job performance in categories such as adherence, average talk times, handle times, wrap times, quality, and production goals and requirements.  Over the course of her employment Burgin received numerous reprimands for not meeting her production goals and requirements.  Burgin contested these reprimands because she believed that Sitel did not take into consideration various problems she encountered with her equipment and the praise she received from customers.  She also claims that these reprimands are suspect because she was not instructed how to improve her performance or told what constituted her adherence score.  Additionally, Burgin alleges that she was reprimanded for calls she did not actually take.

Specifically, Burgin received written warnings on July 19, 2004 and October 24, 2005.  Sitel issued the first written warning

after Burgin was believed to have been impatient with and to have spoken rudely and in a condescending manner to a customer.  The second warning was issued because Sitel found that Burgin used one of her phone lines for outside use in violation of Sitel's policy. Burgin acknowledges that she received these warnings but denies committing the alleged infractions.  She claims that Sitel cannot identify the phone call for which she received the July 2004 warning.  In regards to the October 2005 warning, Burgin asserts that her telephone lines malfunctioned frequently and that because her supervisors would not assist her, she would have to call out of state companies when her customers asked questions she did not understand.  In a meeting regarding the October 2005 warning, Burgin claimed that Sitel was persecuting her because of her religious affiliation and convictions.

Burgin says that she had problems with Sitel's equipment. According to Burgin, no one at Sitel would help her with the equipment problems or with her other job-related problems, even though other employees who made similar requests were given assistance.  She also asserts that younger employees yelled at customers over the phone but were not disciplined for what were violations of Sitel policy.  How much younger they were than Burgin's forty-eight (48) years is not shown.  Sitel, on the other hand, has provided the names and ages of twelve (12) CSPs, both males and females with ages ranging from nineteen (19) to thirty-five (35), who were terminated in 2005 because they used

inappropriate language or conduct in dealing with customers. Burgin repeatedly complained to her superiors, including Madison, Dyess, and Muro, (1) about inaccuracies in her recorded time spent at work which affected her pay, (2) about being singled out for discipline in the workplace, (3) about feelings of being harassed in her workplace, (4) about disagreement with the way she was instructed to handle customer calls, (5) about her questioning of the management, (6) about giving advice to customers, and (7) about being reprimanded in front of other employees.  Burgin obviously was not afraid to complain.

On November 9, 2005, one of Burgin's phone conversations with a customer was monitored, as is Sitel's standard practice for employee evaluation.  During that recorded call, Sitel found that Burgin used an aggressive tone towards the customer and made inappropriate comments to and accusations about the customer. Burgin's supervisor was made aware of the call and forwarded it to Muro.  After his review of the tape, Muro met with Dyess and subsequently terminated Burgin on November 9, 2005 stating as his reason Burgin's highly inappropriate behavior documented on the tape.

## DISCUSSION

### *Intersectional Discrimination??*

This is one of those increasingly frequent employment discrimination cases in which the plaintiff claims several

varieties of discrimination without telling the court which is her best claim, or whether she is waiting for the fact-finder to tell her, or whether, without exactly saying so, she is claiming some combination of discriminatory motives.  Is Burgin now claiming that she is in a very small protected class of women, over forty (48), with a perceived disability, and who belongs to a Bible-reading denomination?  It is, of course, theoretically possible that without Burgin's leaving her Bible out on her desk at work, Sitel would have overlooked her other protected classifications and tolerated her offensive telephone demeanor.  Without knowing Burgin's real or best theory, the court must assume that she is pursuing all avenues for ruling in the alternative and not in the aggregate.  Sitel's motion for summary judgment does not complain of the enigma Burgin presents with her scattergun complaint. Burgin claims to be a victim, of what the court is not informed in any meaningful way.  The court is confident the kitchen sink is in here somewhere, if only it is willing to conduct a search for it. The search is on!

***Burgin's ADEA Claim***

Sitel moves for summary judgment on Burgin's ADEA claim.  In its motion and accompanying brief, Sitel claims that Burgin has not established a *prima facie* case of age discrimination because she was not qualified for the position from which she was terminated, and because she has not shown that other comparably situated employees outside her protected class were treated more favorably.

Sitel also argues that even if Burgin has established a *prima facie* case, she has not rebutted its legitimate, non-discriminatory reason for firing her.  Viewing the evidence in the light most favorable to Burgin, the court is barely able to conclude that she has barely established a *prima facie* case under the ADEA. Nonetheless, Burgin has not rebutted Sitel's non-discriminatory reason for her termination.  Sitel is therefore entitled to judgment as a matter of law on the ADEA claim.  *See* Fed. R. Civ. P. 56(c); *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1358 (11th Cir. 1999).

Although Burgin has alleged that Sitel employees made snide remarks about her age, she does not argue that these remarks constitute "direct evidence" of age discrimination.[2]  Burgin's ADEA claim depends entirely on circumstantial evidence of age animus directed toward her.  Such claims are evaluated by following the framework laid out by the Supreme Court for evaluating Title VII race discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973).  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) ("This Court, as well

---

[2]      Even if Burgin did claim that the specific remark she quotes in her brief (Burgin claims that Madison said in regards to her, "She's old as hell") constituted direct evidence, she could not meet the Eleventh Circuit's "rigorous standard."  To serve as direct evidence, "the evidence must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism. As a result, only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination."  *Damon*, 196 F.3d at 1358-59 (internal citations omitted) (emphasis in original).  Although likely offensive to Burgin, Madison's statement does not indicate that age-related animus was the real reason behind Burgin's termination.

as other federal courts of appeals, uses the framework established in *McDonnell Douglas*... to evaluate ADEA claims that are based upon circumstantial evidence of discrimination.").

To make out a *prima facie* case of age discrimination, "a plaintiff must prove that he or she was: (1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). Here, Sitel concedes prongs 1 and 3. Sitel claims that Burgin was not qualified for her position and has not met prong 2. However, for purposes of summary judgment, the court, viewing the facts in favor of Burgin, will assume that Sitel's decision to hire Burgin constitutes minimal evidence that she was qualified for the position for which she was hired and which she held for a long time.

The age of Burgin's replacement, if there was one, is conspicuously absent from the evidence. Without being provided this information by either party, the court will give the non-movant the benefit of the doubt on it. Additionally, Sitel claims that Burgin cannot meet prong 4 by showing disparate treatment as a result of her age. Again, interpreting the facts in the light most favorable to the non-moving party, Burgin has testified that "younger" employees were given assistance when their equipment

malfunctioned and were given on-the-job instruction in improving their performance when she was not, after she made similar requests.  Burgin also claims that she was ridiculed because of her age.  This testimony, only from Burgin and tenuous at best, is not enough to shift the burden to Sitel.[3]

Arguendo, if Burgin is assumed to have established a prima facie ADEA case and thus created an inference of discrimination, under the McDonnell Douglas framework, to eliminate this presumption, "the defendant need only to produce evidence that there is a legitimate, non-discriminatory reason for the challenged employment action."  Kelliher, 313 F.3d at 1275.  At this stage, the Eleventh Circuit has emphasized that the defendant's burden is extremely light:  "it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Chapman, 229 F.3d at 1024.

_____

    3    Eleventh Circuit law allows ADEA and Title VII plaintiffs to fulfill this third prong by identifying a comparator who is outside the plaintiff's protected class and demonstrating that the comparator did not suffer an adverse employment action despite having committed the same infractions as the plaintiff and being similarly situated in all respects to the plaintiff.  See, e.g., Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  Burgin attempts to make this showing by stating "[e]mployees such as Tasha, AZ, Marcus, Shawn (male), Sanquin, Mike (African American), and Mike Champs were permitted to yell at customers, argue with customers, sign off the phone whenever they wanted, stay off the phone as long as they wanted, read at their desks, and put posters on their walls."  However, identifying a similarly situated comparator for the purposes of establishing a prima facie case of discrimination requires more than the plaintiff's mere accusations.  It requires somebody whose job responsibility is virtually identical to plaintiff's and whose alleged misconduct is virtually identical.  The Eleventh Circuit has stated, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical." Id.  Because Burgin has not nearly begun to fulfill this requirement, this allegation cannot serve as a basis for proving a prima facie case of age discrimination.  The ages of the comparators are not stated.  Burgin says that they are younger than she, which means that they could all be 47 years old, and just as protected as Burgin by the ADEA.

Here, Sitel has articulated a quite unremarkable and reasonable explanation for terminating Burgin.  It asserts that Burgin was fired because she clearly violated a company policy in improperly treating a customer on November 9, 2005.  She was fired immediately.  Burgin had already been reprimanded about engaging in this type of conduct before when she received a written warning for speaking in a rude and condescending manner to another customer on July 19, 2004.  On November 9, 2005, Burgin's supervisor and Muro listened to a recording of Burgin handling the customer call.  They found Burgin to have used an aggressive tone with, made inappropriate comments to, and made improper accusations about a customer, all in violation of Sitel policy. They gave this behavior as their reason for firing Burgin that day.  They confidently put their eggs in one basket that is more than enough to rebut any presumption of age discrimination. *See Kelliher*, 313 F.3d at 1275; *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 770 (11th Cir. 2005) ("So long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it has discharged its burden of production.") (internal punctuation and citations omitted).  Additionally, Sitel has indicated that twelve other Sitel employees under the age of 40 were terminated that same year for the same type of violation of Sitel policy regarding proper treatment of customers.

Because Sitel has proffered a legitimate, non-discriminatory reason for Burgin's termination, it "is entitled to summary

11

judgment unless [Burgin] proffers evidence sufficient to create a
genuine issue of material fact that discrimination was actually the
reason for the challenged action." *Kelliher*, 313 F.3d at 1275.  To
rebut an employer's proffered reason and to show that it is a
pretext for age discrimination, the employee must produce evidence
showing "*both* that the reason was false, *and* that discrimination
was the real reason." *Brooks v. County Comm'n*, 446 F.3d 1160, 1163
(11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.
502, 515, 113 S.Ct. 2742, 2752 (1993))(emphasis in original).

    In her response to Sitel's motion, Burgin presents no evidence
to dispute its assertion that she handled the customer call
inappropriately.  Nothing in her brief contests the sincerity of or
the veracity of Sitel's stated reason.  Even if Burgin had offered
evidence to create a genuine issue of material fact as to the truth
of Sitel's reason for firing her, she has provided nothing to show
that discrimination was the real reason behind her termination.
Burgin's attempt to prove pretext through her contention that
younger employees committed more egregious violations of Sitel
policy than she did and were not disciplined, is the same argument
she makes for her *prima facie* case.  This repetitive allegation
cannot substitute for evidence that Sitel's reason for firing her
was a pretext to hide a discriminatory motive.  *See Bogle v. Orange
County Bd. of County Comm'rs*, 162 F.3d 653, 658-59 (11th Cir. 1998)
("Bogle's evidence... consisted of unverifiable, anecdotal
testimony... from his own experience of isolated incidents and of

Orange County's alleged disciplinary response.  This evidence could not support a reasonable jury finding that Orange County had singled out Bogle for unusually harsh treatment.").

At most, Burgin's evidence consists of complaints about the behavior of other employees, evincing personality conflicts with other Sitel employees.  Although the Eleventh Circuit was dealing with a Title VII rather than an ADEA claim, it has stated, "[the ADEA] prohibits discrimination; it is not a shield against harsh treatment in the work place.  Personal animosity is not the equivalent of... discrimination." *Succar v. Dade County Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000).  "Federal law does not require that all persons treat each other politely." *Wills v. Potter*, No. 05-381, 2008 WL 821921, at *15 (N.D. Fla. March 27, 2008).  Because Burgin has not demonstrated that Sitel's stated non-discriminatory reason for terminating her was both false and a pretext for age discrimination, Sitel is entitled to judgment as a matter of law on Burgin's ADEA claim.

**Burgin's Title VII Sex Discrimination Claim**

Burgin's Title VII sex discrimination claim, contained in Count IV of her complaint, is extremely vague as to what type of Title VII claim of sex discrimination she is making.  The complaint could reasonably be construed to allege sex discrimination in the form of a hostile work environment or sexual harassment, or simple, gender-based discrimination.  Sitel seeks partial summary judgment

only to the extent that the complaint alleges gender-based discrimination. Any Title VII sex discrimination claim, insofar as such claim is based on a hostile work environment and/or sexual harassment, has not been challenged and thus remains by default. Why Sitel has not challenged all Title VII gender discrimination theories is not for this court to worry about at the moment.

As noted in the court's analysis of Burgin's ADEA claim, the *McDonnell Douglas* burden-shifting framework for evaluating discrimination claims based on circumstantial evidence applies in both Title VII and ADEA discrimination cases. *See Kelliher*, 313 F.3d at 1275; *Chapman*, 229 F.3d at 1024. Assuming that Burgin has made out a *prima facie* case of gender-based discrimination under Eleventh Circuit Title VII law (and this court doubts it), Burgin's claim still fails because, again, she has not rebutted Sitel's legitimate, non-discriminatory reason for terminating her. In fact, Burgin has not even responded to Sitel's motion for summary judgment insofar as it challenges her sex discrimination claim. Burgin's failure to make any argument in response to Sitel's motion for summary judgment on her generalized sex discrimination claim leads this court to deem her said claim abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (approving a district court's classification of a claim alleged in the complaint but not addressed on summary judgment as abandoned). Thus, Sitel is

14

entitled to judgment as a matter of law on Burgin's sex discrimination claim insofar as it may be considered a generalized gender-based discrimination claim.  Any claims based on Title VII's prohibition against sexual harassment or against maintaining a hostile work environment for females are not subject to Rule 56 consideration.

### *Burgin's Title VII Religious Discrimination Claim*

Burgin's Title VII discrimination claim based on religion is contained in Count I of her complaint.  She complains of disparate treatment based on her religion, conduct proscribed by Title VII.  She contends that Sitel employees who were not born-again Christians were treated better than she was.  Exactly who was "born-again" and who was not is not exhaustively explained in the discovery materials.  Because Burgin has not proffered direct evidence of discrimination of this type, and because her bare allegations cannot constitute a *prima facie* case of Title VII religious discrimination, Sitel's motion for summary judgment on this theory is due to be granted.  Even if Burgin could fulfill the *prima facie* elements, she, again, has not proffered evidence demonstrating that Sitel's reason for firing her was both untrue and a pretext for a religious discriminatory motive.  Thus, Sitel is entitled to a judgment as a matter of law on this claim.

Although Burgin asserts that some of her co-workers made derogatory comments about her religion, these comments do not

constitute direct evidence of discrimination.  Burgin alleges that
her co-workers called her a "religious fanatic," "holy girl," and
"freak."  These comments may be mean-spirited, but they do not
"indicate that the complained-of employment decision was *motivated*
by the decision-maker's" impermissible religious bias.  *Damon*, 196
F.3d at 1359.  Because "'only the most blatant remarks, whose
intent could be nothing other than to discriminate'... will
constitute direct evidence of discrimination," Burgin must utilize
the *McDonnell Douglas* burden-shifting framework for making out a
Title VII discrimination claim using circumstantial evidence.  *Id.*
(quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82
(11th Cir. 1990)).

 A *prima facie* case of religious discrimination in violation of
Title VII requires:  "(1) she was a member of and/or practiced a
particular religion; (2) she was qualified to perform her job; (3)
she was subject to adverse employment action; (4) defendant treated
similarly-situated employees outside plaintiff's religious class
more favorably; and (5) the person who made the decision to impose
the adverse employment action upon plaintiff was aware of her
religious beliefs." *Tillery v. ATSI, Inc.*, 242 F. Supp. 2d 1051,
1060 (N.D. Ala. 2003) (citing *Lubetsky v. Applied Card Sys.*, 296
F.3d 1301, 1305-06 (11th Cir. 2002)).  In *Lubetsky*, the Eleventh
Circuit also indicated that the plaintiff must show that the
employer's adverse employment action against the plaintiff "was

motivated by [the employer's] knowledge of [the plaintiff's] religion." *Lubetsky*, 296 F.3d at 1306-07. Sitel has conceded that Burgin is a born-again Christian and that Burgin's termination qualifies as an adverse employment action, but Sitel denies that Burgin has fulfilled the other elements of the *prima facie* case.

Sitel again claims that Burgin was not qualified for her job because of her numerous violations of Sitel policy. However, as in Burgin's ADEA claim, the court will assume that Burgin was qualified. In Muro's affidavit, which Sitel has submitted as evidence supporting its motion, Muro acknowledges that, during a meeting with Burgin on October 24, 2005 concerning a written warning issued to Burgin for violating Sitel's policy, Burgin informed him that she believed that she was being "persecuted" because of her being a born-again Christian. Because Muro was the individual who made the final decision to terminate Burgin, and because Burgin notified Muro of her religious affiliation before her termination, Burgin has fulfilled prong 5 of her *prima facie* case.

Burgin claims to fulfill prong 4 of her *prima facie* case by alleging that supervising employees selectively enforced Sitel's policy of not permitting outside reading material on employee desks, forcing her to remove her Bible from sight, while permitting others to have non-religious reading materials, such as magazines, books, and newspapers, on their desks. She argues that these employees were similarly situated and received more favorable

17

treatment than she did because they were allowed to break Sitel's rules regarding reading materials on desks.  These grievances, however, do not demonstrate the existence of comparators who are sufficiently similarly situated.  As a result, Burgin is unable to fulfill this prong of her *prima facie* case.

Eleventh Circuit law requires that, in relying upon similarly situated comparators for the purpose of establishing a *prima facie* case, "the plaintiff must show that he and the employees are similarly situated in all relevant respects... it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (internal citations omitted).  Burgin has only identified her comparators by listing names ("Tasha LNU [Last Name Unknown], AZ LNU, Shawn LNU (male), Sanquin LNU, Mike LNU (African American), and Mike Champs") and has made no effort, other than alleging that they "were treated more favorably than Ms. Burgin in terms of reading material," to demonstrate that these employees were similarly situated and that they were actually treated more favorably than she.  Nothing is known about their religious affiliations.  Burgin herself admits that these employees were instructed to remove reading materials from their desks after Burgin complained about it to a supervisor. The Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing

apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).  Because Burgin has not provided enough evidence to satisfy the Eleventh Circuit's requirements regarding similarly situated comparators, Burgin has not met the fourth prong.

Although Burgin cannot establish a *prima facie* case under the standard articulated by the court in *Tillery*, Burgin also cites to an Eleventh Circuit case that holds, "where intentional religious discrimination under Title VII is alleged, a *prima facie* case is established if the plaintiff demonstrates that the challenged employment decision was made by someone who was aware of the plaintiff's religion." *Lubetsky*, 296 F.3d at 1305.  However, the *Lubetsky* court, as previously noted, also requires the plaintiff to proffer evidence that the adverse employment action was **motivated** by the employer's knowledge of the plaintiff's religion.  *Id.* at 1306-07.  If *Lubetsky* is taken to the extreme that Burgin wants to take it, any employee who is disciplined by an employer who at that time knows of the employee's religious preference can be sued for violating Title VII and get past Rule 56.

Although Muro was made aware of Burgin's religious persuasion prior to her termination, Burgin has made no allegation, and has pointed to no evidence to indicate, that her religious practices were the reason for her discharge or that Muro's decision was motivated by his knowledge of her religion.  Mere knowledge by Sitel of Burgin's religious affiliation and the fact that she was

fired are simply not enough.  To establish a *prima facie* case of religious discrimination, the *Lubetsky* court and the cases it cites require a non-illusory connection between the employer's knowledge of the plaintiff's religious affiliation and the adverse employment action.  *See also Beasley v. Health Care Serv. Corp.*, 940 F.2d 1085, 1088 (7th Cir. 1991).  Because Burgin has not shown any actual connection between Muro's knowledge of her religious affiliation and his decision to fire her, Burgin has not established a *prima facie* case of religious discrimination, and as a result, Sitel is entitled to judgment as a matter of law.

Even if Burgin were able to establish a *prima facie* case of religious discrimination, Sitel's motion for summary judgment would be granted because, as in her ADEA claim, she has not rebutted Sitel's legitimate, non-discriminatory reason for her termination. She has not offered any evidence that meets Sitel's reason head-on, demonstrates it to be untrue, and indicates beyond mere conjecture that Sitel was prejudiced against her for religious reasons, and that this discriminatory motive was the true reason she was fired. *See Tillery*, 242 F. Supp. 2d at 1062 (quoting *Chapman*, 229 F.3d at 1030)).  If not for the earlier reasons, Sitel is entitled to a judgment as a matter of law on Burgin's Title VII religious discrimination claim.

### Burgin's ADA Disability Discrimination Claim

Burgin's ADA claim is contained in Count II of her complaint. Burgin claims that Sitel discriminated against her because she

lacks vision in her right eye.  Because Burgin is unable to establish under ADA law that she was disabled because she had a "record of" a disability or because she was "regarded as" having a disability, she cannot establish a *prima facie* case of disability discrimination.

The Eleventh Circuit has held: "[i]n order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [her] disability."  *Greenberg v. BellSouth Telecomms.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)) (internal punctuation omitted); *see also* 42 U.S.C. § 12112(a).  The ADA places an individual in the category of "disabled" if the individual has "(A) a physical or mental impairment that substantially limits one or more of the major life activities...; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment."  42 U.S.C. § 12102(2); *see also Greenberg*, 498 F.3d at 1264; *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005).  In her response to Sitel's motion, Burgin claims that she is disabled, as defined by the ADA, because she both has a record of being disabled and because Sitel regarded her as being disabled.  Because Burgin has not pointed to evidence from which a reasonable jury could find that she fits either of these classifications, she has not

established a *prima facie* case of ADA discrimination, and Sitel is entitled to a judgment as a matter of law.

For a plaintiff "[t]o establish a record of impairment under the ADA sufficient to be considered disabled, the record of impairment must show that the impairment substantially limited the claimant in one or more of [her] major life activities." *Carr v. Publix Super Mkts., Inc.*, 170 Fed. Appx. 57, 61 (11th Cir. 2006). Additionally, regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), which "[c]ourts, including the Eleventh Circuit Court of Appeals, frequently look to," establish other requirements for plaintiffs who claim to be disabled because of a "record of" a disability. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). The EEOC regulation applicable here states that a plaintiff satisfies the "record of" category of disability under the ADA "if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." 29 C.F.R. pt. 1630, App. § 1630.2(k) (1997). There is nothing in Sitel's employment record on Burgin to suggest a disability regarding eyesight.

Quoting these EEOC regulations, the *Hilburn* court found that the appellant did not have a "record of" a qualifying disability and therefore was not disabled under the ADA because the appellant had never furnished any records indicating the existence of a substantially limiting impairment to her employer. *Hilburn*, 181

F.3d at 1229.  To be disabled under the ADA because of a "record of" a disability, the employer in question must be aware of and adversely act upon the employee's established record of substantial impairment.  *Id.; see also Phillips v. Wal-Mart Stores, Inc.*, 78 F. Supp. 2d 1274, 1286-87 (S.D. Ala. 1999) ("To establish a claim under the ADA based upon a record of disability, a plaintiff must show that... the employer relied upon a record which either classified or misclassified that individual as having a physical or mental impairment that substantially limits a major life activity."); *Michios v. Rooms to Go Miami, Corp.*, No. 96-2658, 1997 WL 813004, at *2 (S.D. Fla. Nov. 13, 1997) (disregarding plaintiff's contention that he was disabled due to a record of a disability because he "provided no evidence that Defendants relied on such a record").

Here, the only evidence of a "record of" disability is Burgin's contention that she received ADA accommodations for her vision problems while a student at the University of Alabama at Birmingham ("UAB"), patient records, progress reports, and prescriptions for glasses from the UAB School of Optometry and the Schaeffer Eye Center, and a billing statement from Retina and Vitreous Associates of Alabama, P.C.  Even if this court had a medical degree and could interpret the notations on these records and ascertain from them that Burgin had a substantially limiting impairment, Burgin would still fall short of meeting her obligation of demonstrating a "record of" a disability.  In her deposition,

23

Burgin admits that, except for telling Dyess on one occasion that she was legally blind in her right eye, she never told anyone at Sitel about her vision problem.  She also admits that she never provided any of the aforementioned records to anyone at Sitel during her employment.  Thus, Burgin does not have a "record of" a qualifying disability.  She never provided a record to Sitel, and therefore Sitel, as a matter of law and fact, never relied on any such record.  Burgin has not satisfied the first prong of her ADA discrimination claim.

Burgin also has failed to show that she is disabled because she was "regarded as" being disabled.  The Eleventh Circuit has held that for a plaintiff "to establish that he has a 'disability' under the 'regarded as' prong... [the plaintiff] must produce evidence showing that [the defendant] regarded him as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1370 (11th Cir. 1998). "Under the 'regarded as' prong, a person is 'disabled' if her employer perceives her as having an ADA-qualifying disability... the perceived impairment must be one that, if real, would substantially limit a major life activity of the individual." *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004)*; see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 2149-50 (1999).  Thus, to qualify as disabled

under this prong, Burgin must produce evidence showing that Sitel "treated her as if she had suffered from a substantially limiting impairment." *Hilburn*, 181 F.3d at 1230.

Burgin has produced no evidence to demonstrate that she was treated as being disabled by Sitel in the Sitel workplace. From the evidence presented, it appears that Burgin's job required the completion of the same tasks that her co-workers were required to complete, no more and no less. She never asked for an accommodation. She has produced no evidence to demonstrate that she was treated as having an impairment that substantially limited any major life activity. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327-28 (11th Cir. 1998). Burgin herself admitted that her eye impairment did not affect her daily activities or her on-the-job performance.

The only possible relevant evidence to which Burgin has pointed is that her co-workers were necessarily aware of her impairment because they made derogatory comments about the appearance of her eye. However, "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." *Michios*, 1997 WL 813004 at *2 (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)). Nothing in Burgin's evidence indicates any belief on the part of any employee at Sitel, supervisor or otherwise, that she could not do her job. *See Phillips*, 78 F.

25

Supp. 2d at 1288.  The comments that Burgin says her co-workers made about her eye reflect poor interpersonal relations but they cannot be attributed to Sitel.  Any such unthinking remarks did not come from the members of management making Burgin's final termination decision.  A reasonable jury could not find that these co-employee comments prove that Sitel regarded Burgin as disabled. *See Standard*, 161 F.3d at 1328.

Because Burgin did not have a "record of" a disability that Sitel relied upon, and because Burgin was not "regarded as" having a disability by Sitel, Burgin has failed to demonstrate that she is disabled under the ADA.  Because Burgin is not disabled under the ADA, she cannot fulfill the first prong of a *prima facie* case of ADA disability discrimination.  Thus, no reasonable jury could find for Burgin on an ADA theory, and Sitel is entitled to judgment as a matter of law on this claim.  This makes it unnecessary to discuss once more the reason proffered by Sitel for Burgin's discharge, a reason that is unrelated to her eyesight or her appearance.

### Burgin's Retaliation Claims

In addition to direct claims of violation of Title VII, ADEA, and ADA, Burgin alleges that Sitel engaged in retaliatory action against her also in violation of Title VII, the ADEA, and the ADA. Sitel only disputes the Title VII retaliation claims.  It only discusses retaliation in the context of Burgin's sex and religious discrimination claims.  The court cannot give Sitel something it

has not asked for.   Because Sitel has not moved for summary judgment on Burgin's ADA and ADEA retaliation claims, these claims survive the dispositive motion stage and must remain for trial, even though Rule 50 may come into play.   Although Burgin has established a *prima facie* case of Title VII retaliation, she (again) has not rebutted Sitel's legitimate, non-discriminatory reason for her termination and shown that reason to be merely a pretext for its unlawful retaliatory motives.   Thus, Sitel is entitled to a judgment as a matter of law on Burgin's Title VII retaliation claims.

The Eleventh Circuit has held, "[i]n order to make a *prima facie* case of retaliation under Title VII, an employee must show that:  (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Freytes-Torres v. City of Sanford*, No. 05-15805, 2008 WL 763216, at *5 (11th Cir. Mar. 28, 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).  Here, Sitel concedes for the purposes of summary judgment that Burgin engaged in protected activity when she complained of sex discrimination and harassment and of religious persecution. Specifically, Sitel acknowledges that Burgin made complaints on her disciplinary action form dated October 24, 2005 and in a meeting on that date.   It concedes that these were protected activities. Additionally, Sitel concedes that for the purposes of summary

judgment, Burgin's termination on November 9, 2005 fulfills the second element of her *prima facie* case.

Sitel does dispute, however, that Burgin can fulfill the third element of her *prima facie* case, namely, whether there is a causal connection between her protected activity and her termination. This third prong, however, is not difficult to establish because "[t]he causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington*, 261 F.3d at 1266 (quoting *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). In proving this element "[f]or purposes of a prima facie case, close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." *Freytes-Torres*, 2008 WL 763216, at *5 (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)). In *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004), the Eleventh Circuit found that a short period of time between an employer's being made aware of a employee's protected conduct and the adverse employment action was enough circumstantial evidence to establish a causal relationship for the purposes of a *prima facie* case. The Supreme Court has stated, "mere temporal proximity between... knowledge of protected activity and an adverse... action... must be very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1501, 1511 (2001). The *Higdon* court cited Eleventh Circuit precedent finding that as much

as one month between the two incidents did not preclude the necessary causal relationship. *Id.* (*citing Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998)). Sitel acknowledges that Burgin engaged in protected activity on October 24, 2005 and was terminated on November 9, 2005 - a mere sixteen (16) days later. This close temporal proximity is enough to establish a causal connection for the purposes of a *prima facie* case of Title VII retaliation.

"Once a plaintiff has established a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Pennington*, 261 F.3d at 1266 (internal citations omitted). Here, Sitel proffers the same reason for Burgin's termination that it has in defense of her discrimination claims, namely, that Burgin was fired because she violated Sitel's conduct policy through her inappropriate treatment of a customer. This is a legitimate, non-retaliatory reason. Burgin previously had been reprimanded for similar improper treatment of a customer on July 19, 2004. Sitel recorded the phone call in question, and Burgin does not dispute the recording's authenticity or the tenor of the conversation.

Burgin has not met her "burden of establishing that [Sitel]'s reason[] [is] pretextual." *Id.* Pretext in this context may be

demonstrated by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find those reasons unworthy of credence." *Freytes-Torres*, 2008 WL 763216, at \*5 (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (punctuation omitted)). Burgin has not proffered any evidence beyond temporal proximity that the real reason she was fired was in retaliation for her complaints of being discriminated against rather than because of her second overall violation of Sitel's conduct policy of how to handle customer calls properly, and her second violation of Sitel protocol in less than three weeks. With nothing but Burgin's self-serving argument that Sitel's reason for terminating her was, in fact, retaliatory, Sitel is entitled to a judgment as a matter of law on the only retaliation claim under Rule 56 consideration. The court finds it difficult to contemplate the theoretical possibility that Sitel could have been retaliating for Burgins making a complaint protected by the ADEA or the ADA but not in retaliation for conduct protected by Title VII. The court cannot agree with an argument never made.

### CONCLUSION

For the foregoing reasons and by separate order, Sitel's motion for partial summary judgment will be granted. Because Sitel only moved for partial summary judgment, Burgin's Title VII sexual

30

harassment and hostile work environment claims, and her ADA and ADEA retaliation claims will remain for trial.

**DONE** this 14th day of May, 2008.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

31